# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

IN THE MATTER OF THE APPLICATION   *
OF THE UNITED STATES OF   *
AMERICA FOR AN ORDER AUTHORIZ-   *
ING THE INSTALLATION AND USE   *
OF A PEN REGISTER AND A TRAP AND   *
TRACE DEVICE, AND AUTHORIZING   *
RELEASE OF SUBSCRIBER INFORMATION *
AND/OR CELL SITE INFORMATION   *

*M J*

~~MISC.~~ NO. _O 7-O//6 -7/ /_

TO BE FILED UNDER SEAL

## APPLICATION

Comes now the United States of America, by and through the United States Attorney for

the Southern District of Alabama and Assistant United States Attorney Sean Costello, and hereby

applies to the Court for an Order as follows:

    A.   INTRODUCTION

        1.   Pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation and use of

a pen register and trap and trace device[1] on the following telephone number:[2]

---

[1]   A "pen register" is a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication . . ." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number" or other identifiers "reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information not include the contents of any communication. 18 U.S.C. § 3127(4).

[2]   Section 3123, as amended (P.L. 107-56 (2001)), empowers courts to authorize the installation and use of pen registers and trap and trace devices in other districts. Section 3123(a)(1) provides that the court may enter an order authorizing a pen register or trap and trace device "anywhere within the United States. . . ." Moreover, Section 3127(2)(A) now defines a "court of competent jurisdiction" as "any district court of the United States (including a magistrate judge of such a court) . . . having jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A).

1

(469) 713-4439, a cellular telephone issued by AT&T/Cingular, with IMSI 310410085851117 and IMEI/ESN 010830002677456, subscribed to in the name of Frederick Cook with a billing address of prepaid account, 67 Unit 6750, Dallas, Texas 75217, and used by Jeremiah HALE. This telephone number will be hereinafter referred to as the **"Subject Telephone Number."**

2. Pursuant to 18 U.S.C. §§ 2703(c) and 2703(d), directing the electronic service providers to disclose or provide upon oral or written request by Special Agents of the Drug Enforcement Administration:

a. Records or other information identifying subscribers or customers (but not including the contents of communications or toll records), namely, subscriber name, address, date of birth, social security number, driver's license (state and number), contact names and numbers, employment information, method of payment, length of service, and type of service utilized, for all published, non-published, listed, or unlisted numbers, dialed or otherwise transmitted to and from the **Subject Telephone Number**;

b. All changes (including additions, deletions, and transfers) in service regarding the **Subject Telephone Number** to include telephone numbers and subscriber information (published, non-published, listed, or unlisted) associated with these service changes; and

c. For the **Subject Telephone Number**, records or other information pertaining to subscriber(s) or customer(s), including historical cellsite information[3] and call detail

---

[3] A cellsite is located in a geographic area within which wireless service is supported through radio signaling to and from antenna tower(s) operated by a service provider. Cellsites are located throughout the United States. Cellular telephones that are powered on will automatically register or re-register with a cellular tower as the phone travels within the provider's service area. The registration process is the technical means by which the network identifies the subscriber, validates the account and determines where to route call traffic. This exchange occurs on a dedicated control channel that is clearly separate from that used for call content (i.e. audio)--which occurs on a separate dedicated channel. As used herein, "Cellsite information" refers categorically to any and all data associated with registration of the Subject Telephone with cellsites/network, as well as other data used by the network to establish a connection with the telephone handset and to maintain connectivity to the network. This includes the physical location and/or address of the cellular tower, cellsite sector, control channel

records[4] for the following dates: August 18, 2007 to the present (but not including the contents of communications).

        d. For the **Subject Telephone Number**, all cellsite information provided to the government on a continuous basis contemporaneous with call origination (for outbound calling) and call termination (for incoming calls), and at such other time upon the oral or written request of the government, including if reasonably available, during the progress of a call. Specific disclosure of cellsite information will assist law enforcement in identifying the approximate physical location of the **Subject Telephone** and will not disclose content of the calls.

II.      CERTIFICATION FOR A PEN REGISTER AND A TRAP AND TRACE DEVICE PURSUANT TO 18 U.S.C. §§ 3122 AND 3123

        In support of this application, I state the following:

        1.      I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an order authorizing the installation and use of pen registers and trap and trace devices.

        2.  I certify that the information likely to be obtained from the pen register and trap and trace devices on the **Subject Telephone Number** is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration in connection with possible violations of federal criminal statutes, including Title 21, United States Code, Sections 841(a)(1), 846, and 853; and it is believed that Jeremiah HALE and others both known and

---

number, neighbor cell lists, and any identification numbers, processing data, and parameters not pertaining to the contents of a call.

    [4]    "Call detail records" are similar to toll records (i.e. historical telephone records of telephone activity, usually listing outgoing calls and date, time, and duration of each call), which are made and retained in the ordinary course of business. However, "call detail records" is the term used when referring to toll records of cellular telephones rather than hardline telephones. Unlike toll records, however, call detail records also include a record of incoming calls and the cell site/sector(s) used by the cellular telephone to obtain service for a call or when in an idle state.

unknown, have and will continue to use the **Subject Telephone Number** in furtherance of the subject offenses..

    3.   Therefore, based upon the above Certification,[5] and pursuant to 18 U.S.C. §§ 3122 and 3123, I request that the court issue an order authorizing:

    a.   The Drug Enforcement Administration to install, or cause the provider to install, and use a pen register device(s) anywhere in the United States to record or decode dialing, routing, addressing, or signaling information (including "post-cut-through dialed digits"[6]) transmitted from the **Subject Telephone Number,** to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls, for a period of sixty days from the date the order is filed by the court.

---

[5]    Section 3122 "was not intended to require independent judicial review of relevance; rather, the reviewing court need only verify the completeness of the certification." In re United States, 10 F.3d 931, 935 (2d Cir. 1993) (citing S. Rep. No. 541, 99th Cong., 2d Sess. 47 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3601); see also United States v. Fregoso, 60 F.3d 1314, 1320 (8th Cir. 1995) (holding that the judicial role under Section 3123(a) is ministerial in nature because a proper application under Section 3122 mandates entry of the order); Brown v. Waddell, 50 F.3d 285, 290 (4th Cir. 1995) (Section 3122 does not require the government to establish probable cause to obtain a pen register or trap and trace device); United States v. Newman, 733 F.2d 1395, 1398 (10th Cir. 1984) ("[N]o showing of probable cause -- or even 'sufficient cause,' as defendant suggests — is necessary to justify authorization of a pen register.")

[6]    "Post-cut-through dialed digits," also called "dialed digit extraction features," are any digits that are dialed from the **Subject Telephone Number** after the initial call setup is completed. For example, some post-cut-through dialed digits are telephone numbers, such as when a subject places a calling card, credit card or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. Under these circumstances, the "post-cut-through" digits are the type of information (i.e., "dialing, routing, addressing, or signaling" information) specifically authorized by the statute for capture. Post-cut- through dialed digits also can represent call content, such as when subjects call automated banking services and enter account numbers, or call voicemail systems and enter passwords, or call pagers and dial call-back telephone numbers (which are considered numeric messages.) To the extent that additional digits that are content are received, the government will not use such information for any investigative purposes.

b. The Drug Enforcement Administration to install, or cause the provider to install, and use trap and trace device(s) on the **Subject Telephone Number** anywhere in the United States to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication and to record the date, time, and duration of calls created by such incoming impulses, for a period of sixty days from the date the order is filed by the court.

c. That, pursuant to 18 U.S.C. § 3123(b)(1)(c), the requested installation and use of a pen register and trap and trace device permit the use of such a pen register and trap and trace device not only on the **Subject Telephone Number**, but also on any changed telephone number(s) subsequently assigned to an instrument bearing the same IMSI or IMEI/ESN as the **Subject Telephone Number**, or any changed IMSI or IMEI/ESN subsequently assigned to the same telephone number as the **Subject Telephone Number**, or any additional changed telephone number(s) and/or IMSI or IMEI/ESN , whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the **Subject Telephone Number**,[7] within the 60-day period authorized by this order.

4. Pursuant to 18 U.S.C. § 3123(a)(1) and § 3123(b)(2),  I further request that the court direct that upon service of the order upon it, the local, long distance, and wireless carriers listed in the proposed order, any other communications service provider providing

---

[7]    Section 3123(b)(1)(C) has been amended to require the Court to specify in the order "the attributes of the communications to which the order applies, including the number or other identifier . . . ." 18 U.S.C. § 3123(b)(1)(C).  The account number, when combined with the same subscriber name for the **Subject Telephone Number** sufficiently specifies "the attributes of the communications to which the order applies, including the number or other identifier . . ." as required by § 3123(b)(1)(C).  Cf. United States v. Duran, 189 F.3d 1071, 1083-1086 (9th Cir. 1999) (holding interception of wire communications on a cellular telephone with a changed telephone number followed by a changed ESN was covered by the order authorizing the interception of wire communications even though the court order authorizing the wiretap only anticipated a changed telephone number but did not anticipate a changed ESN).

service to the **Subject Telephone Number**,[8] and any other person or entity providing wire communication service in the United States whose assistance may facilitate execution of the order, furnish forthwith all information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace devices and with minimum interference with the services that are accorded the persons with respect to whom the installation and use is to take place, with compensation to be paid by the investigative agency for reasonable expenses directly incurred in providing such facilities and assistance.

5. I further request that the order direct the local, long distance, and wireless carriers, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the order, to furnish the results of the pen register and trap and trace devices to Special Agents of the Drug Enforcement Administration as soon as practicable, on a continuing basis, twenty-four (24) hours a day for the duration of the order.

III. SPECIFIC AND ARTICULABLE FACTS ESTABLISHING REASONABLE GROUNDS TO BELIEVE THAT SUBSCRIBER RECORDS AND CELL SITE INFORMATION ARE RELEVANT AND MATERIAL TO AN ONGOING CRIMINAL INVESTIGATION PURSUANT TO 18 U.S.C. § 2703

1. Title 18, United States Code, Section 2703(d) provides that a court may issue an order authorizing disclosure of a record or other information pertaining to a telephone subscriber or customer (not including the contents of communications) when a government agency provides the court with:

[S]pecific and articulable facts showing that there are reasonable

---

[8] The reference to "another communication service provider" is necessary so that the court order is still effective in the event that the **Subject Telephone Number** is transferred to another carrier pursuant to "Local Number Portability" ("LNP"). LNP allows a telephone user to change his/her telephone company but still keep the same telephone number. However, to transfer (i.e. "port") a telephone number pursuant to LNP, the subscriber information must remain the same. Thus, this reference applies if the **Subject Telephone Number** is transferred (i.e. "ported") to another telephone carrier, but the telephone number and subscriber information remain the same.

grounds to believe that the contents of a wire or electronic

communication, or the records or other information sought, are

relevant and material to an ongoing criminal investigation.

The statute, by its own language, precludes holding the government to a higher standard of proof, such as probable cause. See Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414 § 207(2), reprinted in 1992 U.S. Code Cong. & Admin. News 4292. The House Report reflected that "[t]his section imposes an intermediate standard to protect on-line transactional records. It is a standard higher than a subpoena, but not a probable cause warrant." See H.R. Rep. No. 103-827, at 31-32 (1994), reprinted in 1994 U.S.C.A.A.N. 3489, 3511-12.[9]

2. For the purposes of obtaining a court order for disclosure as described in 18 U.S.C. § 2703(c)(1), and in order to satisfy the requirements of 18 U.S.C. § 2703(d), government counsel, based on discussions with DEA SA Todd Hixson, hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records or other information identifying subscribers (but not including the contents of communications) for telephone numbers identified through the pen register and trap and trace device on the **Subject Telephone Number,** cell site information regarding the **Subject Telephone Number,** subscriber information associated with any service changes regarding the **Subject Telephone Number,** will be relevant and material to an ongoing criminal investigation:

a. In September 2006, The Mobile Resident Office of the United States Drug Enforcement Administration (DEA) received information from the Laredo, Texas District

---

[9] Persons calling to and from the **Subject Telephone Number** do not have a Fourth Amendment privacy interest regarding their subscriber information. United States v. Fregoso, 60 F.3d 1314, 1321 (8th Cir. 1995) (rejecting defendant's challenge to court order permitting phone company to supply subscriber information "for the telephone numbers obtained from the pen register and the caller identification service," holding, "We agree with the magistrate judge's assessment that because this information is listed in phone books and city directories, and at a bare minimum revealed to the phone company to obtain telephone service, there can be no expectation that this information will remain private."). See Smith v. Maryland, 442 U.S. 735, 742-44 (1979) ("a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.")

Office of the DEA that Jeremiah HALE was involved in a drug trafficking organization which involved drug trafficking between Mobile, Alabama and Dallas, Texas. On September 16, 2006, DEA Special Agents from the Mobile Resident Office and the Laredo District conducted an undercover operation in Mobile, Alabama during which HALE delivered approximately $101,000.00 in U.S. currency to a DEA Special Agent acting in an undercover capacity. DEA Special Agents then delivered the U.S. currency to HALE's source of supply for cocaine and methamphetamine in Dallas, Texas. On November 11, 2006, HALE delivered approximately $150,000.00 in U.S. currency to the same DEA Special Agent acting in an undercover capacity. Again, the money was delivered to HALE's source of supply in Dallas by the undercover DEA Special Agent. On March 16, 2007, DEA Special Agents in the Dallas, Texas Division Office initiated an intercept of the telephone utilized by HALE's source of supply in Dallas. During the course of the telephone intercept (March 16, 2007 - April 14, 2007), DEA Special Agents intercepted several calls between the Subject Telephone Number, utilized by HALE, and the source of supply. During the calls, HALE and his source of supply use coded language to discuss drug amounts and prices. On August 9, 2007 a DEA Confidential Source (CS) made a consentually recorded telephone call to the **Subject Telephone Number**. During the course of the conversation, the CS and HALE discussed the possibility of future drug transactions.

     b. In Special Agent Hixson's experience, subscriber information, including toll data from numbers obtained from numbers captured by pen registers and the trap and trace devices has yielded information that is relevant and material to narcotics trafficking investigations. Such information includes leads relating to (1) the names of suspected suppliers, customers, and other individuals who assist in the distribution of narcotics (2) the location of stash houses where narcotics are stored, (3) the identity of transportation sources used by the drug traffickers; (4) the locations of money transfer businesses used by members of the operation to launder proceeds of drug trafficking activities or through which money is exchanged with co-conspirators; (5) the geographic breadth of the suspected drug trafficking cell; and (6) the identity of potential organizers, leaders, managers, or supervisors of the suspected trafficking cell through examination of the calling patterns revealed by the toll data. Special Agent Hixson has advised the undersigned that based upon his training and experience, one way to identify

8

co-conspirators is to obtain subscriber information for calls made to and from the **Subject Telephone Number**, and then conduct an investigation concerning those names and addresses. Based upon subscriber information, Special Agent Hixson would then direct other investigators to conduct surveillance at the addresses and determine if criminal activity was occurring there, which in turn could yield potential names of coconspirators and potential drug storage locations used by the organization.

        c. The investigating agents have further advised the undersigned that the general geographic location of the **Subject Telephone Number** derived from cell site information used by the **Subject Telephone Number** can be used to corroborate the observations of surveillance agents. More specifically, surveillance agents can compare observations of the user of the **Subject Telephone Number** with cell site information in order to verify the identification and proximate location of the user of the **Subject Telephone Number**.

        3. Accordingly, based upon the above proffer, and pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), because there are reasonable grounds to believe that such information is relevant and material to the ongoing investigation, I further request that the court issue an order requiring the providers listed in the proposed order, lodged concurrently herewith, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate execution of the order, to disclose, or provide upon oral or written request by Special Agents of the Drug Enforcement Administration the information set forth above in paragraph A2.

    D.    REQUEST THAT ORDER PRECLUDE NOTICE AND THAT APPLICATION
            AND ORDER BE FILED UNDER SEAL

        1. Based upon the information provided in this application, I believe disclosure of the requested court order may result in flight from potential prosecution or the destruction of or tampering with evidence, or may otherwise seriously jeopardize the investigation. Moreover, the exact nature of the government "pen register" device and its configuration is classified as a law enforcement sensitive investigative technique, the disclosure of which would likely

jeopardize other on-going investigations, and/or future use of the technique. Therefore, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d), I request that this application and order be sealed and that the court direct the local, long distance, and wireless carriers listed in the proposed order, any internet service provider or other electronic communications provider providing voice-over IP telephony,[10] and any other local, long distance, or wireless carrier servicing the **Subject Telephone Number** who is obligated by the order to provide assistance to the Applicant, not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber(s) for the **Subject Telephone Number**, the occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the **Subject Telephone Number**, or to any other person, the existence of this order, in full or redacted form, of the pen register or trap and trace devices, or of this investigation, unless and until otherwise ordered by this court.

2. I further request that the identity of any targets of the investigation may be redacted from any copy of the order served on any service provider or other person, and that this order and application be SEALED until otherwise ordered by the court.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

8/28/07

Date

Sean P. Costello
Assistant United States Attorney

---

[10] Voice-over Internet Protocol telephony, also called Voice-over IP or VoIP, is essentially a type of hardware and software that allows people to use the internet as a transmission medium for telephone calls. In general, this means sending voice information in the form of digital packets of information rather than sending it through the traditional public switch telephone network. Like a pen register or trap and trace on traditional telephone service, a pen register or trap and trace for VoIP service will not disclose the contents of the call.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

IN THE MATTER OF THE APPLICATION   *
OF THE UNITED STATES OF   *
AMERICA FOR AN ORDER AUTHORIZ-   *    **MJ NO. 07-0116-M**
ING THE INSTALLATION AND USE   *
OF A PEN REGISTER AND A TRAP AND   *    **TO BE FILED UNDER SEAL**
TRACE DEVICE, AND AUTHORIZING   *
RELEASE OF SUBSCRIBER INFORMATION *
AND/OR CELL SITE INFORMATION   *

## APPLICATION

       Comes now the United States of America, by and through the United States Attorney for the Southern District of Alabama and Assistant United States Attorney Sean Costello, and hereby applies to the Court for an Order as follows:

     A.   INTRODUCTION

       1. Pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation and use of a pen register and trap and trace device[1] on the following telephone number:[2]

---

[1]   A "pen register" is a "device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication . . ." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number" or other identifiers "reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information not include the contents of any communication. 18 U.S.C. § 3127(4).

[2]   Section 3123, as amended (P.L. 107-56 (2001)), empowers courts to authorize the installation and use of pen registers and trap and trace devices in other districts. Section 3123(a)(1) provides that the court may enter an order authorizing a pen register or trap and trace device "anywhere within the United States. . . ." Moreover, Section 3127(2)(A) now defines a "court of competent jurisdiction" as "any district court of the United States (including a magistrate judge of such a court) . . . having jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A).

1

832-651-3150, a cellular telephone issued by T-Mobile, with ESN 05DD7152 and MSID 000008324439221, subscribed to in the name of Donna Cole with a billing address of 9955 Bammel North Houston Road, Houston, Texas 77086-2969, and used by Darren PERRYMAN . This telephone number will be hereinafter referred to as the "**Subject Telephone Number**."

2. Pursuant to 18 U.S.C. §§ 2703(c) and 2703(d), directing the electronic service providers to disclose or provide upon oral or written request by Special Agents of the Drug Enforcement Administration:

a. Records or other information identifying subscribers or customers (but not including the contents of communications or toll records), namely, subscriber name, address, date of birth, social security number, driver's license (state and number), contact names and numbers, employment information, method of payment, length of service, and type of service utilized, for all published, non-published, listed, or unlisted numbers, dialed or otherwise transmitted to and from the **Subject Telephone Number**;

b. All changes (including additions, deletions, and transfers) in service regarding the **Subject Telephone Number** to include telephone numbers and subscriber information (published, non-published, listed, or unlisted) associated with these service changes; and

c. For the **Subject Telephone Number**, records or other information pertaining to subscriber(s) or customer(s), including historical cellsite information[3] and call detail

---

[3] A cellsite is located in a geographic area within which wireless service is supported through radio signaling to and from antenna tower(s) operated by a service provider. Cellsites are located throughout the United States. Cellular telephones that are powered on will automatically register or re-register with a cellular tower as the phone travels within the provider's service area. The registration process is the technical means by which the network identifies the subscriber, validates the account and determines where to route call traffic. This exchange occurs on a dedicated control channel that is clearly separate from that used for call content (i.e. audio)--which occurs on a separate dedicated channel. As used herein, "Cellsite information" refers categorically to any and all data associated with registration of the Subject Telephone with cellsites/network, as well as other data used by the network to establish a connection with the telephone handset and to maintain connectivity to the network. This includes the physical location and/or address of the cellular tower, cellsite sector, control channel

records[4] for the following dates: August 20, 2007 to the present (but not including the contents of communications).

        d. For the **Subject Telephone Number**, all cellsite information provided to the government on a continuous basis contemporaneous with call origination (for outbound calling) and call termination (for incoming calls), and at such other time upon the oral or written request of the government, including if reasonably available, during the progress of a call. Specific disclosure of cellsite information will assist law enforcement in identifying the approximate physical location of the **Subject Telephone** and will not disclose content of the calls.

II.     CERTIFICATION FOR A PEN REGISTER AND A TRAP AND TRACE DEVICE PURSUANT TO 18 U.S.C. §§ 3122 AND 3123

        In support of this application, I state the following:

     1.     I am an "attorney for the Government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. § 3122, may apply for an order authorizing the installation and use of pen registers and trap and trace devices.

     2. I certify that the information likely to be obtained from the pen register and trap and trace devices on the **Subject Telephone Number** is relevant to an ongoing criminal investigation being conducted by the Drug Enforcement Administration in connection with possible violations of federal criminal statutes, including Title 21, United States Code, Sections 841(a)(1), 846, and 853; and it is believed that Darren PERRYMAN and others both known and

---

number, neighbor cell lists, and any identification numbers, processing data, and parameters not pertaining to the contents of a call.

    [4]   "Call detail records" are similar to toll records (i.e. historical telephone records of telephone activity, usually listing outgoing calls and date, time, and duration of each call), which are made and retained in the ordinary course of business. However, "call detail records" is the term used when referring to toll records of cellular telephones rather than hardline telephones. Unlike toll records, however, call detail records also include a record of incoming calls and the cell site/sector(s) used by the cellular telephone to obtain service for a call or when in an idle state.

unknown, have and will continue to use the **Subject Telephone Number** in furtherance of the subject offenses..

       3.   Therefore, based upon the above Certification,[5] and pursuant to 18 U.S.C. §§ 3122 and 3123, I request that the court issue an order authorizing:

       a.   The Drug Enforcement Administration to install, or cause the provider to install, and use a pen register device(s) anywhere in the United States to record or decode dialing, routing, addressing, or signaling information (including "post-cut-through dialed digits"[6]) transmitted from the **Subject Telephone Number,** to record the date and time of such dialings or transmissions, and to record the length of time the telephone receiver in question is "off the hook" for incoming or outgoing calls, for a period of sixty days from the date the order is filed by the court.

---

    [5]   Section 3122 "was not intended to require independent judicial review of relevance; rather, the reviewing court need only verify the completeness of the certification." In re United States, 10 F.3d 931, 935 (2d Cir. 1993) (citing S. Rep. No. 541, 99th Cong., 2d Sess. 47 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3601); see also United States v. Fregoso, 60 F.3d 1314, 1320 (8th Cir. 1995) (holding that the judicial role under Section 3123(a) is ministerial in nature because a proper application under Section 3122 mandates entry of the order); Brown v. Waddell, 50 F.3d 285, 290 (4th Cir. 1995) (Section 3122 does not require the government to establish probable cause to obtain a pen register or trap and trace device); United States v. Newman, 733 F.2d 1395, 1398 (10th Cir. 1984) ("[N]o showing of probable cause -- or even 'sufficient cause,' as defendant suggests — is necessary to justify authorization of a pen register.")

    [6]   "Post-cut-through dialed digits," also called "dialed digit extraction features," are any digits that are dialed from the **Subject Telephone Number** after the initial call setup is completed. For example, some post-cut-through dialed digits are telephone numbers, such as when a subject places a calling card, credit card or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. Under these circumstances, the "post-cut-through" digits are the type of information (i.e., "dialing, routing, addressing, or signaling" information) specifically authorized by the statute for capture. Post-cut- through dialed digits also can represent call content, such as when subjects call automated banking services and enter account numbers, or call voicemail systems and enter passwords, or call pagers and dial call-back telephone numbers (which are considered numeric messages.) To the extent that additional digits that are content are received, the government will not use such information for any investigative purposes.

b. The Drug Enforcement Administration to install, or cause the provider to install, and use trap and trace device(s) on the **Subject Telephone Number** anywhere in the United States to capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication and to record the date, time, and duration of calls created by such incoming impulses, for a period of sixty days from the date the order is filed by the court.

c. That, pursuant to 18 U.S.C. § 3123(b)(1)(c), the requested installation and use of a pen register and trap and trace device permit the use of such a pen register and trap and trace device not only on the **Subject Telephone Number**, but also on any changed telephone number(s) subsequently assigned to an instrument bearing the same ESN or MSID as the **Subject Telephone Number**, or any changed ESN or MSID subsequently assigned to the same telephone number as the **Subject Telephone Number**, or any additional changed telephone number(s) and/or ESN or MSID , whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the **Subject Telephone Number**,[7] within the 60-day period authorized by this order.

4. Pursuant to 18 U.S.C. § 3123(a)(1) and § 3123(b)(2), I further request that the court direct that upon service of the order upon it, the local, long distance, and wireless carriers listed in the proposed order, any other communications service provider providing

---

[7]    Section 3123(b)(1)(C) has been amended to require the Court to specify in the order "the attributes of the communications to which the order applies, including the number or other identifier . . . ." 18 U.S.C. § 3123(b)(1)(C). The account number, when combined with the same subscriber name for the **Subject Telephone Number** sufficiently specifies "the attributes of the communications to which the order applies, including the number or other identifier . . ." as required by § 3123(b)(1)(C). Cf. United States v. Duran, 189 F.3d 1071, 1083-1086 (9th Cir. 1999) (holding interception of wire communications on a cellular telephone with a changed telephone number followed by a changed ESN was covered by the order authorizing the interception of wire communications even though the court order authorizing the wiretap only anticipated a changed telephone number but did not anticipate a changed ESN).

service to the **Subject Telephone Number**,[8] and any other person or entity providing wire communication service in the United States whose assistance may facilitate execution of the order, furnish forthwith all information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace devices and with minimum interference with the services that are accorded the persons with respect to whom the installation and use is to take place, with compensation to be paid by the investigative agency for reasonable expenses directly incurred in providing such facilities and assistance.

5. I further request that the order direct the local, long distance, and wireless carriers, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate execution of the order, to furnish the results of the pen register and trap and trace devices to Special Agents of the Drug Enforcement Administration as soon as practicable, on a continuing basis, twenty-four (24) hours a day for the duration of the order.

III.   SPECIFIC AND ARTICULABLE FACTS ESTABLISHING REASONABLE GROUNDS TO BELIEVE THAT SUBSCRIBER RECORDS AND CELL SITE INFORMATION ARE RELEVANT AND MATERIAL TO AN ONGOING CRIMINAL INVESTIGATION PURSUANT TO 18 U.S.C. § 2703

1.   Title 18, United States Code, Section 2703(d) provides that a court may issue an order authorizing disclosure of a record or other information pertaining to a telephone subscriber or customer (not including the contents of communications) when a government agency provides the court with:

> [S]pecific and articulable facts showing that there are reasonable

---

[8]   The reference to "another communication service provider" is necessary so that the court order is still effective in the event that the **Subject Telephone Number** is transferred to another carrier pursuant to "Local Number Portability" ("LNP"). LNP allows a telephone user to change his/her telephone company but still keep the same telephone number. However, to transfer (i.e. "port") a telephone number pursuant to LNP, the subscriber information must remain the same. Thus, this reference applies if the **Subject Telephone Number** is transferred (i.e. "ported") to another telephone carrier, but the telephone number and subscriber information remain the same.

6

grounds to believe that the contents of a wire or electronic

communication, or the records or other information sought, are

relevant and material to an ongoing criminal investigation.

The statute, by its own language, precludes holding the government to a higher standard of proof, such as probable cause. See Communications Assistance for Law Enforcement Act, Pub. L. No. 103-414 § 207(2), reprinted in 1992 U.S. Code Cong. & Admin. News 4292. The House Report reflected that "[t]his section imposes an intermediate standard to protect on-line transactional records. It is a standard higher than a subpoena, but not a probable cause warrant." See H.R. Rep. No. 103-827, at 31-32 (1994), reprinted in 1994 U.S.C.A.A.N. 3489, 3511-12.[9]

2. For the purposes of obtaining a court order for disclosure as described in 18 U.S.C. § 2703(c)(1), and in order to satisfy the requirements of 18 U.S.C. § 2703(d), government counsel, based on discussions with DEA SA Todd Hixson, hereby sets forth the following specific and articulable facts showing that there are reasonable grounds to believe that the records or other information identifying subscribers (but not including the contents of communications) for telephone numbers identified through the pen register and trap and trace device on the **Subject Telephone Number,** cell site information regarding the **Subject Telephone Number,** subscriber information associated with any service changes regarding the **Subject Telephone Number,** will be relevant and material to an ongoing criminal investigation:

a. In September 2006, The Mobile Resident Office of the United States Drug Enforcement Administration (DEA) received information from the Laredo, Texas District

---

[9]    Persons calling to and from the **Subject Telephone Number** do not have a Fourth Amendment privacy interest regarding their subscriber information. United States v. Fregoso, 60 F.3d 1314, 1321 (8th Cir. 1995) (rejecting defendant's challenge to court order permitting phone company to supply subscriber information "for the telephone numbers obtained from the pen register and the caller identification service," holding, "We agree with the magistrate judge's assessment that because this information is listed in phone books and city directories, and at a bare minimum revealed to the phone company to obtain telephone service, there can be no expectation that this information will remain private."). See Smith v. Maryland, 442 U.S. 735, 742-44 (1979) ("a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.")

Office of the DEA that Jeremiah HALE was involved in a drug trafficking organization which involved drug trafficking between Mobile, Alabama and Dallas, Texas. On September 16, 2006, DEA Special Agents from the Mobile Resident Office and the Laredo District conducted an undercover operation in Mobile, Alabama during which HALE delivered approximately $101,000.00 in U.S. currency to a DEA Special Agent acting in an undercover capacity. DEA Special Agents then delivered the U.S. currency to HALE's source of supply for cocaine and methamphetamine in Dallas, Texas. On November 11, 2006, HALE delivered approximately $150,000.00 in U.S. currency to the same DEA Special Agent acting in an undercover capacity. Again, the money was delivered to HALE's source of supply in Dallas by the undercover DEA Special Agent. On March 16, 2007, DEA Special Agents in the Dallas, Texas Division Office initiated an intercept of the telephone utilized by HALE's source of supply in Dallas. During the course of the telephone intercept (March 16, 2007 - April 14, 2007), DEA Special Agents intercepted several calls between the HALE and the source of supply. During the calls, HALE and his source of supply use coded language to discuss drug amounts and prices. On August 9, 2007 a DEA Confidential Source (CS) made a consentually recorded telephone call to HALE. During the course of the conversation, the CS and HALE discussed the possibility of future drug transactions. Darren PERRYMAN is an associate of HALE's currently in the Dallas area. In late August, 2007, a DEA Confidential Source made a consentually recorded telephone call to the **Subject Telephone Number** and spoke with PERRYMAN. During that telephone call, the CS and PERRYMAN discussed drug amounts and prices, and the possibility of future deals involving PERRYMAN and HALE.

b. In Special Agent Hixson's experience, subscriber information, including toll data from numbers obtained from numbers captured by pen registers and the trap and trace devices has yielded information that is relevant and material to narcotics trafficking investigations. Such information includes leads relating to (1) the names of suspected suppliers, customers, and other individuals who assist in the distribution of narcotics (2) the location of stash houses where narcotics are stored, (3) the identity of transportation sources used by the drug traffickers; (4) the locations of money transfer businesses used by members of the operation to launder proceeds of drug trafficking activities or through which money is exchanged with

co-conspirators; (5) the geographic breadth of the suspected drug trafficking cell; and (6) the identity of potential organizers, leaders, managers, or supervisors of the suspected trafficking cell through examination of the calling patterns revealed by the toll data. Special Agent Hixson has advised the undersigned that based upon his training and experience, one way to identify co-conspirators is to obtain subscriber information for calls made to and from the **Subject Telephone Number**, and then conduct an investigation concerning those names and addresses. Based upon subscriber information, Special Agent Hixson would then direct other investigators to conduct surveillance at the addresses and determine if criminal activity was occurring there, which in turn could yield potential names of coconspirators and potential drug storage locations used by the organization.

     c. The investigating agents have further advised the undersigned that the general geographic location of the **Subject Telephone Number** derived from cell site information used by the **Subject Telephone Number** can be used to corroborate the observations of surveillance agents. More specifically, surveillance agents can compare observations of the user of the **Subject Telephone Number** with cell site information in order to verify the identification and proximate location of the user of the **Subject Telephone Number**.

     3. Accordingly, based upon the above proffer, and pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), because there are reasonable grounds to believe that such information is relevant and material to the ongoing investigation, I further request that the court issue an order requiring the providers listed in the proposed order, lodged concurrently herewith, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate execution of the order, to disclose, or provide upon oral or written request by Special Agents of the Drug Enforcement Administration the information set forth above in paragraph A2.

**D. REQUEST THAT ORDER PRECLUDE NOTICE AND THAT APPLICATION AND ORDER BE FILED UNDER SEAL**

1. Based upon the information provided in this application, I believe disclosure of the requested court order may result in flight from potential prosecution or the destruction of or tampering with evidence, or may otherwise seriously jeopardize the investigation. Moreover, the exact nature of the government "pen register" device and its configuration is classified as a law enforcement sensitive investigative technique, the disclosure of which would likely jeopardize other on-going investigations, and/or future use of the technique. Therefore, pursuant to 18 U.S.C. §§ 2705(b) and 3123(d), I request that this application and order be sealed and that the court direct the local, long distance, and wireless carriers listed in the proposed order, any internet service provider or other electronic communications provider providing voice-over IP telephony,[10] and any other local, long distance, or wireless carrier servicing the **Subject Telephone Number** who is obligated by the order to provide assistance to the Applicant, not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber(s) for the **Subject Telephone Number**, the occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the **Subject Telephone Number**, or to any other person, the existence of this order, in full or redacted form, of the pen register or trap and trace devices, or of this investigation, unless and until otherwise ordered by this court.

2. I further request that the identity of any targets of the investigation may be redacted from any copy of the order served on any service provider or other person, and that this order and application be SEALED until otherwise ordered by the court.

---

[10] Voice-over Internet Protocol telephony, also called Voice-over IP or VoIP, is essentially a type of hardware and software that allows people to use the internet as a transmission medium for telephone calls. In general, this means sending voice information in the form of digital packets of information rather than sending it through the traditional public switch telephone network. Like a pen register or trap and trace on traditional telephone service, a pen register or trap and trace for VoIP service will not disclose the contents of the call.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

8/30/2007
Date

Sean P. Costello
Assistant United States Attorney